**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| PHOENIX TRADING, INC., a Washington corporation, DBA Amercare Products Inc.; WENDY HEMMING, an individual, *Plaintiffs-Appellants*, <br><br> v. <br><br> LOOPS LLC, a Delaware limited liability corporation; LOOPS FLEXBRUSH LLC, a Delaware limited liability corporation; STEVEN L. KAYSER, an individual, *Defendants-Appellees*. | No. 11-36053 <br><br> D.C. No. 2:10-cv-00920-JLR <br><br><br> OPINION |

Appeal from the United States District Court
for the Western District of Washington
James L. Robart, District Judge, Presiding

Submitted April 11, 2013[*]
Seattle, Washington
Submission Vacated and Deferred July 15, 2013
Resubmitted October 4, 2013

Filed October 4, 2013

---

[*] The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2)(c).

Before: A. Wallace Tashima and Consuelo M. Callahan, Circuit Judges, and Raner C. Collins, District Judge.[**]

Opinion by Judge Tashima

## SUMMARY[***]

### Washington Anti-SLAPP Statute

The panel affirmed the district court's order striking a complaint under Washington's anti-SLAPP statute.

In a defamation action arising out of a business dispute between companies that design and distribute hygiene products for prisoners, the panel held that the district court did not abuse its discretion by entertaining the untimely anti-SLAPP motion. The panel also held that plaintiff could not show a likelihood of success as to any of the alleged defamatory statements, and therefore, the complaint was properly dismissed under Washington's anti-SLAPP statute.

[**] The Honorable Raner C. Collins, United States District Judge for the District of Arizona, sitting by designation.

[***] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Brooks F. Cooper, Portland, Oregon, for Plaintiffs-Appellants.

Nicholas L. Jenkins and Amber L. Pearce, Floyd, Pflueger & Ringer, P.S., Seattle, Washington for Defendants-Appellees.

## OPINION

TASHIMA, Circuit Judge:

This defamation action arises out of a business dispute between companies that design and distribute hygiene products for prisoners.  One of those companies, Loops, designed a flexible toothbrush made for safe use in prisons and then bid on a contract with the New York City Department of Corrections ("NYC-DOC").  The other company, Amercare, ultimately won the contract using a similar toothbrush.  In a series of letters to government officials and to the press, Loops then alleged that Amercare had engaged in procurement fraud because, among other things, Amercare had counterfeited Loops products.  Based on those statements, Amercare filed this defamation action in Washington state court.  The action was removed to the Western District of Washington, and the district court granted Loops' motion to strike the complaint under Washington's anti-SLAPP statute.  This appeal followed.  We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## I.

Plaintiffs-Appellants are Phoenix Trading, Inc., dba Amercare Products, Inc., and Wendy Hemming (together "Amercare"). Amercare imports and distributes toiletries and health products, and it often contracts with correctional institutions. Hemming is the majority shareholder and president of Amercare. Defendants-Appellees are Loops LLC, Loops Flexbrush LLC, and Steven Kayser (collectively, "Loops"). Loops designs and markets oral hygiene products for safe use in prisons. Kayser is the founder of Loops and the inventor of the Loops Flexbrush, a toothbrush with a flexible handle that cannot be altered into a shank.[1] Loops applied for a patent on the Loops Flexbrush in August 2004, and the patent issued on February 26, 2008.

## A. The Patent Litigation

On July 30, 2010, Loops filed a patent infringement action in the Western District of Washington. In that action, Loops alleged that: Amercare fraudulently obtained a sample of the Loops Flexbrush; sent it to China for copying; and then – relying on pricing information obtained from Loops – underbid Loops for a contract with the NYC-DOC. *Loops, LLC v. Phoenix Trading, Inc.*, No. 08-1064, 2010 WL 3041866, at *1–*3 (W.D. Wash. 2010).

The district court granted partial summary judgment to Amercare. It held that Loops could not recover monetary damages because Amercare's last sale of the allegedly infringing toothbrush occurred no later than May 22, 2008,

---

[1] A "shank" is a prison-made knife. *See United States v. Urena*, 659 F.3d 903, 905–06 (9th Cir. 2011).

yet Loops had not adequately marked its product until September 12, 2008, and had not notified Amercare of its patent until June 13, 2008. Thus, the district court held that under 35 U.S.C. § 287, Loops could not recover monetary damages for its patent infringement claim. *Id.* at \*4–\*5, \*11–\*12. The district court also granted summary judgment on several related claims. *Id*. At \*11–\*12.[2]

## B. The Defamation Litigation

On February 18, 2010, during the pendency of the patent litigation, Amercare filed a defamation action against Loops in Washington state court, and the action was later removed to the Western District of Washington.[3] *Phoenix Trading, Inc. v. Kayser*, No. 10-0920, 2011 WL 3158416, at \*1–\*2 (W.D. Wash. 2011). The defamation claims target four sets of statements.

### 1. Statements regarding alteration of Loops toothbrushes

Loops – through either Kayser or Kayser's counsel – sent three letters to various New York City officials, all alleging that Amercare had altered Loops toothbrushes and passed them off as its own. All three letters were part of Loops'

---

[2] A few months later, Loops filed a motion for discovery sanctions based on newly discovered evidence. *See Loops LLC v. Phoenix Trading, Inc.*, No. 08-1064, 2011 WL 915785, at \*1, \*6–\*7 (W.D. Wash. 2011). For reasons that do not bear on this appeal, the court sanctioned Amercare by entering judgment in favor of Loops. *Id*. at \*10.

[3] Amercare had amended its state court complaint to add a claim for false trademark registration under 15 U.S.C. § 1120. *Phoenix Trading*, 2011 WL 3158416, at \*2. That claim was later voluntarily dismissed.

claim that Amercare won the contract by way of procurement fraud. The letters alleged that Amercare had filed off the Loops trademark from sample Loops toothbrushes, affixed the Amercare trademark, and presented the altered toothbrushes to the NYC-DOC in its bid. The first letter, sent on August 20, 2007, was addressed to Mayor Michael Bloomberg and several other New York City officials. The second letter, sent on August 22, 2007, was addressed to Mario Crescenzo, New York's Chief Contracting Officer. The third letter, sent on September 12, 2007, was addressed to New York's Office of the General Counsel.

### 2. Statements regarding lead content of Amercare toothbrushes

On February 18, 2008, Kayser sent a letter to New York officials and several *New York Times* reporters, alleging that Amercare toothbrushes were "laden with lead and heavy metals" and had "excessive amounts of lead and heavy metals." These allegations were based on an examination – conducted by Intertek (a testing laboratory) and commissioned by Loops – of the Amercare toothbrushes. The Intertek report had detected some levels of lead and other heavy metals, but the report concluded that the products easily complied with relevant regulations.

### 3. Statements regarding patent infringement

In certain communications, Loops accused Amercare of infringing one of its patents. These statements were made, with varying degrees of clarity, in: (1) the February 18, 2008, letter discussed above; (2) an April 21, 2008, letter to various New York City officials, which referenced toothbrushes that the NYC-DOC purchased in 2007; (3) a May 19, 2008, letter

sent to the International Anticounterfeiting Coalition ("IAC"), the press, and various New York City officials; and (4) a July 29, 2008, letter to the press.

### 4. Statements regarding counterfeit Loops toothbrushes

Loops also accused Amercare of "counterfeiting." In most of the letters discussed above, Loops stated that Amercare had provided "counterfeit toothbrushes" to the NYC-DOC. Similar allegations were contained in a letter sent to the IAC, *Harper's Bazaar Magazine*, and the *New York Sun.*

## C. District Court ruling

The parties filed cross-motions for summary judgment, and Loops filed a special motion to strike under Washington's anti-SLAPP statute, Wash. Rev. Code § 4.24.525.[4] The court first found that the anti-SLAPP motion was timely. *Phoenix Trading*, 2011 WL 3158416, at *6. The court then ruled that, under § 4.24.510, Loops was immune from civil liability for all statements made to government agencies or officials. *Id*. at *7.

Turning to the statements made to the media, the court concluded that the statements were made to a "public forum in connection with an issue of public concern" under § 4.24.525(2)(d). *Id*. As for the statements to the IAC, the court held that they were in furtherance of Loops' free speech rights and in connection with an issue of public concern. *Id*.

---

[4] All subsequent statutory references are to the Revised Code of Washington, unless otherwise noted.

at *8.  Thus, with respect to the media and IAC statements, the burden shifted to Amercare to show a probability of success on the merits.

The court then concluded that Amercare failed to show a likelihood of overcoming the two-year statute of limitations for defamation claims.  *Id.* at *9–*10.  This deficiency applied to the statements regarding product alteration and counterfeiting.  As for the remaining statements, the court held that Amercare's contract with a public agency placed it in the role of a public official; accordingly, Amercare had to show that Loops acted with malice.  *Id*. at *11.  In the district court's view, Amercare had failed to carry its burden of showing malice with respect to any of the four categories of statements.  *Id*. at *11–*16.  Accordingly, the court granted the anti-SLAPP motion and denied the summary judgment motions as moot.  *Id*. at *16.

## II.

### A.  The Anti-SLAPP Statute

Washington's anti-SLAPP statute, like many others throughout the country, was designed quickly to dispose of and deter lawsuits that chill the exercise of speech and petition rights.  *See* S.S.B. No. 6395, 61st Leg., Reg. Sess., 2010 Wash. Legis. Serv. Ch. 118, § 1.    Under § 4.24.525(4)(a), "[a] party may bring a special motion to strike any claim that is based on an action involving public participation and petition."[5]  The anti-SLAPP analysis then

---

[5] An "action involving public participation" includes, among other things:

proceeds in two steps. First, the movant must show by a preponderance of the evidence that the claim is "based on an action involving public participation and petition." § 4.24.525(4)(b). If the moving party meets that burden, the responding party mush establish, by clear and convincing evidence, a likelihood of success on the merits. *Id*. If the responding party meets its burden, the motion must be denied. *Id.*

Amercare did not contest the first step in the district court, and on appeal it concedes that its claims involve public participation. *See Phoenix Trading*, 2011 WL 3158416, at *7–*8. Accordingly, after addressing the timeliness of the motion, we address only the second step of the anti-SLAPP analysis.

## B. Standards of Review

We review an anti-SLAPP ruling *de novo*. *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1102 (9th Cir. 2003). There is little Washington caselaw on the relative burdens of proof under Washington's anti-SLAPP statute and, in such

---

(d) Any oral statement made, or written statement or other document submitted, in a place open to the public or a public forum in connection with an issue of public concern; or

(e) Any other lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public concern, or in furtherance of the exercise of the constitutional right of petition.

Wash. Rev. Code § 4.24.525(2)(d)–(e).

circumstances, we may look to the standards governing California's similarly structured anti-SLAPP statute. *See Castello v. City of Seattle*, No. C10-1457, 2010 WL 4857022, at *4 (W.D. Wash. 2010) (applying California law because the California Anti-SLAPP Act "mirrors" Washington's anti-SLAPP statute (citing *Aronson v. Dog Eat Dog Films, Inc.*, 738 F. Supp. 2d 1104, 1110 (W.D. Wash. 2010))). In California, a plaintiff resisting an anti-SLAPP motion "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Wilson v. Parker, Covert & Chidester*, 50 P.3d 733, 739 (Cal. 2002) (internal quotation marks omitted), *abrogated on other grounds as stated in Hutton v. Hafif*, 59 Cal. Rptr. 3d 109,125 (Ct. App. 2007). Thus, "[t]he burden on the plaintiff is similar to the standard used in determining motions for nonsuit, directed verdict, or summary judgment." *Gilbert v. Sykes*, 53 Cal. Rptr. 3d 752, 763 (Ct. App. 2007) (internal quotation marks omitted).

## III.

### A.  Timeliness

Amercare first argues that the anti-SLAPP motion was untimely.  Under § 4.24.525(5)(a), the motion "may be filed within sixty days of the service of the most recent complaint or, in the court's discretion, at any later time upon terms it deems proper."  The operative complaint in this matter was filed on May 21, 2010, but the anti-SLAPP motion was not filed until February 25, 2011.  The district court excused the delay, however, because (1) Amercare did not assert any prejudice; and (2) the parties had not engaged in any discovery.  *Phoenix Trading*, 2011 WL 3158416, at *6.  The

court also noted that most of the evidentiary materials associated with the anti-SLAPP motion were included in the concurrently filed cross-motions for summary judgment. *Id*. These were permissible factors to weigh in the timeliness analysis; thus, the district court did not abuse its discretion by entertaining the anti-SLAPP motion.

## B. Likelihood of success

The crux of this appeal is whether Amercare met its burden of showing a likelihood of success on the merits. The district court's merits determination centered on three issues: (1) immunity under § 4.24.510; (2) the statute of limitations; and (3) the elements of defamation.

### 1. Under § 4.24.510, Loops is immune for all statements made to government agencies.

Section 4.24.510 grants "immun[ity] from civil liability" for statements "to any branch or agency of federal, state, or local government . . . regarding any matter reasonably of concern to that agency." This provision is considered Washington's first anti-SLAPP statute, which was later expanded – both substantively and procedurally – by the enactment of § 4.24.525 in 2010. *See Aronson*, 738 F. Supp. 2d at 1109. Immunity under § 4.24.510 does not require a showing of good faith, *Bailey v. State*, 191 P.3d 1285, 1291 (Wash. Ct. App. 2008), and Washington courts describe it as an affirmative defense. *See Suggs v. Hamilton*, 116 Wash. App. 1016, No. 27141-9-II, 2003 WL 1298665, at \*8 (Ct. App. 2003) (unpublished decision), *rev'd on other*

*grounds by In re Marriage of Suggs*, 93 P.3d 161 (Wash. 2004).[6]

Amercare does not seem to dispute that § 4.24.510 attaches to Loops' statements to government agencies and officials, and it is clear that the provision applies. Mayor Bloomberg, Mr. Crescenzo, and the other New York City officials who received Loops' statements are part of a "branch or agency" of local government; likewise, the U.S. Attorney and the U.S. Customs Agency are branches or agencies of the federal government. Moreover, the statements were "reasonably of concern" to these agencies because they included allegations of procurement fraud, public health threats, potential criminal conduct, and the importation of counterfeit and/or patent-infringing products. Accordingly, Amercare has failed to show a likelihood of success with regard to any statements made to government officials. We are thus left with the four categories of statements that were made to either the press or to the IAC.

---

[6] Under California law, the viability of an affirmative defense is properly considered in resolving an anti-SLAPP motion. Indeed, "[s]everal published cases have considered the validity of defenses in determining whether the plaintiff has shown a probability of prevailing in the context of [an anti-SLAPP motion]." *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*, 35 Cal. Rptr. 3d 31, 43–44 & n.11 (Ct. App. 2005) (rejecting plaintiff's contention that it had no obligation to disprove affirmative defense in anti-SLAPP context). There is no indication that Washington would apply a different rule, *see Castello*, 2010 WL 4857022, at *4; thus, the district court properly considered the strength of Loops' affirmative defenses in ruling on the motion to strike.

## 2. The statute of limitations bars claims regarding the product alteration and counterfeiting accusations.[7]

### (a) Background

As noted above, Amercare claims that the alteration and counterfeiting accusations were defamatory. Loops argues that these claims are barred by the two-year statute of limitations. *See* Wash. Rev. Code § 4.16.100 (setting limitation for libel and slander claims).[8]

Loops' earliest statements regarding alteration and counterfeiting were sent in August and September of 2007. On October 4, 2007, Mario Crescenzo forwarded Hemming (Amercare's president) the August 20, 2007 letter from Kayser, which accused Amercare of altering and counterfeiting Loops toothbrushes. Crescenzo asked Hemming to provide a "written response to the protest." Hemming responded in a letter sent sometime before October 23, 2007.[9] In that letter, she denied that Amercare had altered

---

[7] Amercare did not challenge the limitations ruling in its opening brief. Loops addressed it briefly in its answering brief, and Amercare then briefly addressed the issue in its reply. Accordingly, Amercare has likely waived the right to challenge the statute of limitations ruling. *Alaska Ctr. for Env't v. U.S. Forest Serv.*, 189 F.3d 851, 858 n.4 (9th Cir. 1999). As discussed below, however, even if there was no waiver, the district court's limitations ruling can be affirmed on the merits.

[8] Loops does not assert that claims premised on the other two categories of statements – regarding patent infringement and lead content – were barred by the statute of limitations.

[9] Hemming's letter to Crescenzo is not dated, but Crescenzo referred to the letter in an October 23, 2007, email.

Loops brushes "in any way." She also stated that the toothbrushes in Amercare's warehouse "are in no way counterfeit." Despite these communications, Amercare did not file its defamation action until February 18, 2010. *Phoenix Trading*, 2011 WL 3158416, at \*2.

Loops argues that Crescenzo's letter to Hemming – and her subsequent response – show that Amercare and Hemming were aware of the operative facts supporting the defamation claims as early as October 2007, and thus that the claims are barred by the two-year limitations period.

### (b) Analysis

"[A] cause of action accrues at the time the plaintiff knew or should have known all of the essential elements of the cause of action. The rule of law postponing the accrual of the cause of action is known as the 'discovery rule.'" *White v. Johns-Manville Corp.*, 693 P.2d 687, 691 (Wash. 1985). "[T]he discovery rule requires a plaintiff to use due diligence in discovering the basis for the cause of action." *Clare v. Saberhagen Holdings, Inc.*, 123 P.3d 465, 467 (Wash. Ct. App. 2005). Thus, "when a plaintiff is placed on notice by some appreciable harm occasioned by another's wrongful conduct, the plaintiff must make further diligent inquiry to ascertain the scope of the actual harm. The plaintiff is charged with what a reasonable inquiry would have discovered." *Green v. A.P.C. (Am. Pharm. Co.)*, 960 P.2d 912, 916 (Wash. 1998).

On this record, Amercare has not shown a likelihood of satisfying the statute of limitations. The Crescenzo letter – which attached the August 20, 2007, Kayser letter – apprised Amercare of the key allegations against it (counterfeiting and

product alteration) and of the potential harm caused by these statements (loss of the NYC-DOC contract). Indeed, Amercare's response letter asserted that Loops' allegations were false, thus demonstrating awareness of the potential harm at that time. Accordingly, the district court properly held that Amercare failed to show, by clear and convincing evidence, a likelihood of success on the limitations issue.[10]

In light of our conclusions regarding § 4.24.510 immunity and the statute of limitations, the only surviving defamation claims involve the statements regarding lead content and patent infringement that were made to either the IAC or to the press. Neither § 4.24.510 nor the statute of limitations applies to those statements and thus, as to those statements only, we turn to the merits.

### 3. Amercare did not show a likelihood of satisfying the elements of defamation.

"A defamation action consists of four elements: (1) a false statement, (2) publication, (3) fault, and (4) damages." *Duc Tan v. Le*, 300 P.3d 356, 363 (Wash. 2013). "A public official who sues for defamation may only recover damages upon a showing that the defamatory statement was made with

---

[10] Amercare contends that it was entitled to tolling of the limitations period until it had acquired evidence of malice. But tolling is not available simply because a plaintiff has not gathered all evidence necessary to assert its strongest case; instead, the clock begins running as soon as the plaintiff is aware of the "gravamen of the legal claim." *See Blackledge v. City of Tacoma*, 118 Wash. App. 1078, No. 28777-3-II, 2003 WL 22391010, at *3 (Ct. App. 2003) (unpublished decision) (defamation claim accrued once plaintiff was on notice of statement in question). Here, the gravamen of the claim was revealed in the Crescenzo and Keyser letters.

'actual malice' – that is, made with knowledge of its falsity or with reckless disregard of its truth or falsity." *Herron v. KING Broad. Co.*, 746 P.2d 295, 301 (Wash. 1987) (citing *N.Y. Times v. Sullivan*, 376 U.S. 254, 279–80 (1964)).[11] "'Reckless disregard' means (1) a high degree of awareness of probable falsity, or (2) that the defendant in fact entertained serious doubts as to the statement's truth." *Id.* (internal quotation marks, citations, and alterations omitted).

### (a) Statements regarding lead content

This claim centers on the February 18, 2008, letter sent to New York City officials and several *New York Times* reporters, alleging without elaboration that Amercare toothbrushes were "laden with lead and heavy metals" and had "excessive amounts of lead and heavy metals." These allegations were made despite the results of an earlier examination (commissioned by Loops) of the Amercare toothbrushes, which detected some levels of lead and other elements, but concluded that the products easily complied with federal regulations. Although Loops has § 4.24.510 immunity for the lead-content allegations made to government officials, *see* Part III.B.1, *supra*, that immunity does not apply to statements made to the press. We agree, however, with Loops that the statements were nonactionable opinions, rather than false statements of fact. *See Robel v. Roundup Corp.*, 59 P.3d 611, 621 (Wash. 2002) ("Because

---

[11] The district court concluded that Amercare qualified as a "public figure" because the statements in question involved the manner in which Amercare performed duties under a public contract. *See Phoenix Trading*, 2011 WL 3158416, at *11 (citing *Corbally v. Kennewick Sch. Dist.*, 973 P.2d 1074, 1078 (Wash. Ct. App. 1999)). Amercare does not contest this ruling; thus, we assume, without deciding, that Amercare qualifies as a public figure and therefore must show malice.

expressions of opinion are protected under the First Amendment, they are not actionable." (quotation marks omitted)).

"To determine whether a statement is nonactionable, a court should consider at least (1) the medium and context in which the statement was published, (2) the audience to whom it was published, and (3) whether the statement implies undisclosed facts." *Dunlap v. Wayne*, 716 P.2d 842, 848 (Wash. 1986). The first two factors indicate that the statements were nonactionable opinions. The statements were made in the context of a business dispute in which Loops clearly had a pecuniary interest in undoing the Amercare contract. Under such circumstances, the press would have been prepared for hyperbole and exaggeration. As the Washington Supreme Court has recognized, "[i]n the context of ongoing public debates, the audience is prepared for mischaracterizations and exaggerations, and is likely to view such representations with an awareness of the subjective biases of the speaker." *Id*. Indeed, before sending the allegedly defamatory statements, Kayser acknowledged that his conclusion about lead content was just his "opinion." Moreover, Kayser's use of the terms "excessive" and "laden with" implies a statement of opinion because they are terms of degree and approximation. The press – an audience that is charged with investigating the accuracy of assertions – likely would not have perceived these exaggerations as statements of fact. *See Haueter v. Cowles Publ'g Co.*, 811 P.2d 231, 239 (Wash. Ct. App. 1991) (statements that are "not provable as false" but are instead "rhetorical hyperbole" are nonactionable). Thus, the first two factors weigh against Amercare.

The third factor cuts somewhat in Amercare's favor, but is not dispositive. Loops' statements implied some knowledge of the lead content of Amercare's products, yet the letter did not reference or attach the Intertek report. Nevertheless, the context and audience are sufficient to preclude Amercare from meeting its burden as to the lead-content statements. Indeed, "the context and audience often ensure that any implicit facts will be perceived as 'merely a characterization of those facts.'" *Robel*, 59 P.3d at 622 (quoting *Ollman v. Evans*, 750 F.2d 970, 985 (D.C. Cir. 1984)). Moreover, the letter did offer to provide "clarification and supporting documentation" if requested. Accordingly, Amercare did not show a likelihood of success as to the lead-content statements.

### (b) Statements regarding patent infringement

Loops obtained a patent on the Flexbrush on February 26, 2008. But even before the patent issued, Loops made several statements suggesting that Amercare was infringing its patent. Amercare asserts that those pre-issuance statements were defamatory. Most of these allegations were made to government officials and thus, as discussed above, they cannot sustain Amercare's defamation claims. And although Loops made oblique references to patent infringement in certain communications with the press and the IAC, none of those statements was defamatory.

First, the February 18, 2008, letter – which was addressed to both government officials and to the press – accused Amercare of "counterfeiting . . . patented products." But this statement simply accuses Amercare of counterfeiting, and not patent infringement, and thus any claim based on this statement is barred by the statute of limitations. *See* Part

III.B.2, *supra*.  Second, although the May 19, 2008, letter was sent to the press and to the IAC, its only allegation was that "these [city] agencies knowingly infringed on our patents." In other words, the letter – read charitably – appears to be accusing the New York City government (rather than Amercare) of some form of contributory infringement.  Even if the letter could be construed as accusing Amercare of infringement, it was sent after the patent had issued and Amercare has not asserted that post-issuance allegations of infringement were defamatory.  Third, Loops sent a July 29, 2008, letter to the press that enclosed various filings from the patent litigation, including the complaint and a declaration submitted by Kayser.[12]  As with the May 19 letter, this communication was sent after the issuance of the patent and is thus nonactionable.  Moreover, there is nothing defamatory about forwarding to the press public filings from a lawsuit. *See McNeal v. Allen*, 621 P.2d 1285, 1287 (Wash. 1980) ("Allegedly libelous statements, spoken or written by a party or counsel in the course of a judicial proceeding, are absolutely privileged if they are pertinent or material to the redress or relief sought, whether or not the statements are legally sufficient to obtain that relief.").  In sum, Amercare failed to show that any of the statements regarding patent infringement could sustain a defamation claim.

---

[12] Amercare puts considerable emphasis on this declaration because in it, Kayser retracts his allegation that Amercare altered Loops brushes (though he maintained that Amercare brushes were "counterfeit" and "infringing").  Amercare thus argues that this concession shows that Loops acted with malice.  However, because we rely on other bases, discussed above, for rejecting the defamation claims, we do not reach the question of malice.

**IV.**

Amercare's defamation action was premised on numerous letters that Loops sent to New York City officials, the press, and the IAC. The district court correctly held that Amercare could not show a likelihood of success as to any of these statements; thus, the complaint was properly dismissed under Washington's anti-SLAPP statute.

The judgment of the district court is **AFFIRMED.**