**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.



FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE MAY 2 8 2015

Madsen, C.J.
CHIEF JUSTICE

This opinion was filed for record
at 8:00 Am on May 28, 2015

for Ronald R. Carpenter
Supreme Court Clerk

## IN THE SUPREME COURT OF THE STATE OF WASHINGTON

KENT L. and LINDA DAVIS; JEFFREY
and SUSAN TRININ; and SUSAN MAYER,
derivatively on behalf of OLYMPIA FOOD
COOPERATIVE,

          Petitioners,

    v.

GRACE COX; ROCHELLE GAUSE; ERIN
GENIA; T.J. JOHNSON; JAYNE
KASZYNSKI; JACKIE KRZYZEK;
JESSICA LAING; RON LAVIGNE;
HARRY LEVINE; ERIC MAPES; JOHN
NASON; JOHN REGAN; ROB
RICHARDS; SUZANNE SHAFER; JULIA
SOKOLOFF; and JOELLEN REINECK
WILHEM,

          Respondents.

NO. 90233-0

EN BANC

Filed MAY 2 8 2015

STEPHENS, J.—This case requires us to decide the constitutionality of the Washington Act Limiting Strategic Lawsuits Against Public Participation (anti-SLAPP statute). LAWS OF 2010, ch. 118 (codified at RCW 4.24.525). In the statute's prefatory findings, the legislature explained it was "concerned about lawsuits brought primarily to chill the valid exercise of the constitutional rights of

freedom of speech and petition for the redress of grievances," *id.* § 1(1)(a), and so the statute's purpose was to establish "an efficient, uniform, and comprehensive method for speedy adjudication" of such lawsuits, *id.* § 1(2)(b).

The statute attempts to achieve this goal in three principal ways. It halts discovery in such cases presumptively, RCW 4.24.525(5)(c), creates a "special motion to strike a claim" (anti-SLAPP motion), *id.* at (4)(b), and awards a prevailing party on the motion attorney fees and a $10,000 assessment, *id.* at (6)(a). When ruling on an anti-SLAPP motion, the trial court first determines whether the claim at issue is "based on an action involving public participation and petition," a defined term that broadly describes rights of expression and petition. *Id.* at (4)(b). If that is so, the trial court then decides whether the party bringing the claim can prove by "clear and convincing evidence a probability of prevailing on the claim." *Id.* at (4)(b). If the party cannot meet that burden, the statute requires the trial court to dismiss the claim and award statutory remedies to the opposing party. *Id.* at (6)(a).

Though the statute seeks to "[s]trike a balance between the rights of persons to file lawsuits and to trial by jury and the rights of persons to participate in matters of public concern," LAWS OF 2010, ch. 118, § 1(2)(a), we conclude the statute's evidentiary burden fails to strike the balance that the Washington Constitution requires. Because RCW 4.24.525(4)(b) requires the trial judge to adjudicate factual questions in nonfrivolous claims without a trial, we hold RCW 4.24.525 violates the right of trial by jury under article I, section 21 of the Washington

Constitution and is invalid. We reverse the Court of Appeals and remand this case to the superior court for further proceedings.

## I. BACKGROUND

### A. *Overview of Washington's Anti-SLAPP Laws*

Anti-SLAPP statutes punish those who file lawsuits—labeled strategic lawsuits against public participation or SLAPPs—that abuse the judicial process in order to silence an individual's free expression or petitioning activity. Tom Wyrwich, *A Cure for a "Public Concern": Washington's New Anti-SLAPP Law*, 86 WASH. L. REV. 663, 666-68 (2011). Such litigation is initiated "[w]ith no concern for the inevitable failure of the lawsuit" and instead only forces the defendant into costly litigation that "devastate[s] the defendant financially and chill[s] the defendant's public involvement." *Id.* at 666-67. Though such suits are "typically dismissed as groundless or unconstitutional," the problem is that dismissal comes only after "the defendants are put to great expense, harassment, and interruption of their productive activities." LAWS OF 2010, ch. 118, § 1(1)(b).

In 1989, Washington became the first state to enact anti-SLAPP legislation. LAWS OF 1989, ch. 234 (codified as amended at RCW 4.24.500-.520). This initial statute grants speakers immunity from claims based on the speaker's communication to a governmental entity regarding any matter reasonably of concern to the governmental entity. *See* RCW 4.24.510. However, this statute has come to be seen as having a limited effect because it applies only to

communications to governmental entities and it creates no method for early dismissal. Wyrwich, *supra*, at 669-70.

In 2010, the legislature enacted the anti-SLAPP statute at issue in this case. LAWS OF 2010, ch. 118 (codified at RCW 4.24.525). This statute is unique from its predecessor in that it creates an entirely new method for adjudicating SLAPPs, separate from the rules of civil procedure. The new statute did not amend or repeal the prior statute and instead codifies its new procedures in one new statutory section. *See* RCW 4.24.525. Subsections (1) and (2) define key terms. Subsection (3) provides that the law does not apply to prosecutors. Subsection (4) is the law's mainspring: it establishes a "special motion to strike a claim" and sets forth the evidentiary standard that trial courts must use to adjudicate the motion. Subsection (5) contains various procedural rules to halt discovery and ensure speedy adjudication of an anti-SLAPP motion. Subsection (6) provides the prevailing party on the motion statutory damages of $10,000, attorney fees, costs, and discretionary additional relief. Subsection (7) states the statute does not abridge any other rights the movants possess.

The law's mainspring, subsection (4), provides that a party may bring a special motion to strike any claim that is based on "an action involving public participation and petition." RCW 4.24.525(4)(a). That phrase—"an action involving public participation and petition"—is a defined term that uses capacious language in five nonexclusive examples. *See id.* at (2)(a)-(e). When a party brings such a motion, the moving party has "the initial burden of showing by a

preponderance of the evidence" that the claim is based on an action involving public participation and petition. *Id.* at (4)(b). If the moving party meets this burden, the burden shifts to the responding party "to establish by clear and convincing evidence a probability of prevailing on the claim." *Id.* When a trial judge adjudicates such a motion, "the court shall consider pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based." *Id.* at (4)(c). If the court determines the responding party has met its burden to establish by clear and convincing evidence a probability of prevailing on the claim, "the substance of the determination may not be admitted into evidence at any later stage of the case," *id.* at (4)(d)(i), and the case proceeds toward trial.

Upon the filing of a special motion to strike, subsection (5) freezes all other aspects of the litigation. Discovery is stayed, as are pending motions and hearings. *Id.* at (5)(c). The discovery stay remains in effect until the court rules on the special motion to strike, though on a party's motion and for good cause shown, the court may order that "specified discovery or other hearings or motions be conducted." *Id.*

Subsection (5) also ensures the special motion to strike will be resolved quickly. The motion must be filed within 60 days of service of the most recent complaint or at a later time in the court's discretion. *Id.* at (5)(a). The court must hold a hearing on the motion within 30 days, unless "the docket conditions of the court require a later hearing" and, regardless, the court "is directed" to hold the hearing "with all due speed and such hearings should receive priority." *Id.* The

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

court must render its decision "as soon as possible," but no later than seven days after the hearing. *Id.* at (5)(b). Every party has a "right of expedited appeal" from the trial court's order granting the motion, the trial court's order denying the motion, or the trial court's "failure to rule on the motion in a timely fashion." *Id.* at (5)(d).

When a party prevails on an anti-SLAPP motion, the court not only dismisses the other side's claim, but also must award the moving party costs, attorney fees, and $10,000 in statutory damages. *Id.* at (6)(a)(i)-(ii). The court may award "[s]uch additional relief . . . as the court determines to be necessary to deter repetition of the conduct and comparable conduct by others similarly situated." *Id.* at (6)(a)(iii).

B. *Procedural Background*

The Olympia Food Cooperative is a nonprofit corporation grocery store. It emphasizes an egalitarian philosophy that requires consensus in decision-making and engages in various forms of public policy engagement, such as boycotts of certain goods. At issue in this case, the Cooperative's board of directors adopted a boycott of goods produced by Israel-based companies to protest Israel's perceived human rights violations. The board adopted this boycott without staff consensus on whether it should be adopted.

Five members of the Cooperative (plaintiffs) brought a derivative action against 16 current or former members of its board (defendants). The complaint alleged the board acted ultra vires and breached its fiduciary duties by violating the

Cooperative's written "Boycott Policy." *See* Clerk's Papers (CP) at 106-07. That policy, adopted by the board in 1993, provides that the Cooperative "will honor nationally recognized boycotts" when the staff "decide[s] by consensus" to do so. *Id.* at 106. Because the board adopted the boycott of Israel-based companies without staff consensus, the complaint sought a declaratory judgment that the boycott was void, a permanent injunction of the boycott, and an "award of damages in an amount to be proved at trial." *Id.* at 17. Defendants responded that the board's inherent authority to govern the Cooperative under its bylaws and the Washington Nonprofit Corporation Act, RCW 24.03.095, authorized the adoption of the boycott without staff consensus, notwithstanding the boycott policy.

Defendants filed a special motion to strike plaintiffs' claims under the anti-SLAPP statute. Plaintiffs opposed the motion on statutory and constitutional grounds and requested that the trial court lift the anti-SLAPP statute's automatic stay of discovery. The superior court denied plaintiffs' discovery request, rejected their constitutional challenges to the statute, and granted defendants' special motion to strike. Pursuant to RCW 4.24.525(6)(a), the superior court ordered plaintiffs to pay $221,846.75 to defendants: $10,000.00 in statutory damages to each defendant ($160,000.00 total), attorney fees ($61,668.00), and costs ($178.75).[1] Plaintiffs appealed, and the Court of Appeals affirmed on all issues.

---

[1] In *Akrie v. Grant*, 180 Wn.2d 1008, 325 P.3d 913 (2014) (review stayed pending this case), the court is asked to determine whether, as a matter of statutory interpretation, RCW 4.24.525(6)(a) requires that $10,000 be awarded to each prevailing defendant (here, $160,000 total) or instead $10,000 to all defendants in total. Because we invalidate RCW 4.24.525 today, we do not reach that question of interpretation.

-7-

*Davis v. Cox*, 180 Wn. App. 514, 325 P.3d 255 (2014). We granted plaintiffs' petition for review. *Davis v. Cox*, 182 Wn.2d 1008, 345 P.3d 784 (2014).

## II. DISCUSSION

Plaintiffs and supporting amici curiae contend the anti-SLAPP statute's burden of proof, stay of discovery, and statutory penalties are unconstitutional on several grounds. They contend some or all of these provisions violate the right of trial by jury under article I, section 21 of the Washington Constitution; the Washington separation of powers doctrine under *Putman v. Wenatchee Valley Medical Center, PS*, 166 Wn.2d 974, 979-85, 216 P.3d 374 (2009); the Washington right of access to courts under *Putman*, 166 Wn.2d at 979; the petition clause of the First Amendment to the United States Constitution; and the vagueness doctrine under the due process clause of the Fourteenth Amendment to the United States Constitution. We hold the anti-SLAPP statute violates the right of trial by jury, and do not resolve how these other constitutional limits may apply to the anti-SLAPP statute's provisions.

### A. *The Anti-SLAPP Statute Establishes a Preliminary Procedure for Factual Adjudication of Claims Without a Trial, Not a Summary Judgment Procedure*

Before turning to the constitutional arguments against the anti-SLAPP statute, we must resolve a dispute about how the statute operates. Defendants contend RCW 4.24.525(4)(b) requires the trial judge to perform an analysis equivalent to a summary judgment analysis, that is, not find facts and instead grant the motion only if undisputed material facts show the movant is entitled to relief as a matter of law.

Plaintiffs counter that the statute requires the trial judge to weigh the evidence and make a factual determination on the probability they will prevail on the merits of their claim. The Court of Appeals below relied on its decision in *Dillon v. Seattle Deposition Reporters, LLC*, 179 Wn. App. 41, 86-90, 316 P.3d 1119 (2014), to construe the statute as a summary judgment analysis in order to save its constitutionality. *Davis*, 180 Wn. App. at 546-47. Though the doctrine of constitutional avoidance requires us to choose a constitutional interpretation of a statute over an unconstitutional interpretation when the statute is "'genuinely susceptible to two constructions,'" *Gonzales v. Carhart*, 550 U.S. 124, 154, 127 S. Ct. 1610, 167 L. Ed. 2d 480 (2007) (quoting *Almendarez-Torres v. United States*, 523 U.S. 224, 238, 118 S. Ct. 1219, 140 L. Ed. 2d 350 (1998)), that is not the case here. We conclude the plain language of RCW 4.24.525(4)(b) is not genuinely susceptible to being interpreted as a summary judgment procedure.

We review de novo questions of statutory interpretation. *Eubanks v. Brown*, 180 Wn.2d 590, 596-97, 327 P.3d 635 (2014). To discern and implement the legislature's intent, "[w]e begin by looking at the 'statute's plain language and ordinary meaning.'" *Id.* at 597 (internal quotation marks omitted) (quoting *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003)). Where a statute's plain language is unambiguous, "we 'must give effect to that plain meaning as an expression of legislative intent.'" *Id.* (quoting *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002)).

The plain language of RCW 4.24.525(4)(b) requires the trial court to weigh the evidence and make a factual determination of plaintiffs' "probability of prevailing on the claim." The moving party bears "the initial *burden* of showing by a *preponderance of the evidence* that [plaintiffs'] claim is based on [defendants'] action involving public participation and petition." RCW 4.24.525(4)(b) (emphasis added). "If the moving party meets this *burden*, the *burden shifts* to the responding party *to establish* by *clear and convincing evidence a probability* of prevailing on the claim." *Id.* (emphasis added). And when the trial judge adjudicates these questions, the statute directs that the trial judge "shall consider pleadings and *supporting and opposing* affidavits stating the facts" relating to the underlying claims and defenses. *Id.* at (4)(c) (emphasis added).

By contrast, summary judgment is proper only if the moving party shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). By their terms, the two standards involve fundamentally different inquiries. The anti-SLAPP statute provides a burden of proof concerning whether the evidence crosses a certain threshold of proving a likelihood of prevailing on the claim. *See* 2 MCCORMICK ON EVIDENCE § 336 (Kenneth S. Brown ed., 7th ed. 2013) (comparing burdens of production and burdens of proof). But summary judgment does not concern degrees of likelihood or probability. Summary judgment requires a legal certainty: the material facts must be undisputed, and one side wins as a matter of law. If the legislature intended to adopt a summary judgment standard, it could have used the well-known language of CR

-10-

56(c). But it did not do so. It instead chose language describing the evidentiary burden to evaluate the "probability of prevailing on the claim." RCW 4.24.525(4)(b). And it directed the trial judge to evaluate disputed evidence, including "supporting and opposing affidavits." *Id.* at (4)(c). In this case, the trial judge did just that.[2] Thus, RCW 4.24.525(4)(b)'s plain language requires the trial judge to make factual determinations and adjudicate a SLAPP claim.

Another way to frame our conclusion is to consider what the defendants ask us to do. They ask us to interpret the words "to establish by clear and convincing evidence a probability of prevailing on the claim" to mean "to establish by clear and convincing evidence a probability of prevailing on the claim, if there is no genuine issue as to any material fact and the moving party is entitled to prevail on the special motion to strike as a matter of law." This goes beyond interpretation

---

[2] One disputed material fact in this case is whether a boycott of Israel-based companies is a "nationally recognized boycott[]," as the Cooperative's boycott policy requires for the board to adopt a boycott. CP at 106. The declarations on this fact conflict. *Compare, e.g.*, CP at 348 (Decl. of Jon Haber) ("No matter where they have been pursued, efforts to organize boycotts of and divestment from Israel have failed in the United States. In short, policies boycotting and/or divesting from the State of Israel have never been 'nationally recognized' in this county. Among food cooperatives alone, the record is stark: every food cooperative in the United States where such policies have been proposed has rejected them. [Describes examples.]"), *with* CP at 470 (Decl. of Grace Cox) ("[T]he web site of the U.S. Campaign to End the Occupation . . . name[s] hundreds of its own U.S. member organizations[] as supporters for its campaigns, including boycotts against Motorola, Caterpillar, and other companies in the U.S. and around the world that were profiting from Israel's occupation. The U.S. Campaign now reports about 380 state-level member *organizations* across the country, including five businesses in Olympia, WA."). On this disputed material fact, when the superior court resolved the anti-SLAPP motion, it weighed the evidence and found the defendants' "evidence clearly shows that the Israel boycott and divestment movement is a national movement." CP at 990. The Court of Appeals below reasoned that this is an immaterial fact, on the theory that the Cooperative's board is not bound by its adopted policies because its inherent authority to manage the affairs of the corporation includes the authority to disregard its adopted policies. *Davis*, 180 Wn. App. at 532-36.

-11-

*Davis, et al. v. Cox, et al.*, 90233-0

and requires us to rewrite the statute; we decline the invitation. *J.P.*, 149 Wn.2d at 450 ("[W]e 'cannot add words or clauses to an unambiguous statute when the legislature has chosen not to include that language.'" (quoting *State v. Delgado*, 148 Wn.2d 723, 727, 63 P.3d 792 (2003))). And because the statute contains no ambiguity, we cannot use the doctrine of constitutional avoidance to "'press statutory construction to the point of disingenuous evasion even to avoid a constitutional question.'" *State v. Abrams*, 163 Wn.2d 277, 282, 178 P.3d 1021 (2008) (internal quotation marks omitted) (quoting *Miller v. French*, 530 U.S. 327, 341, 120 S. Ct. 2246, 147 L. Ed. 2d 326 (2000)).

Though RCW 4.24.525(4)(b)'s language itself is plain, we observe that a related provision confirms our reading. If the trial court determines the responding party has met its burden to establish by clear and convincing evidence a probability of prevailing on the claim, "the substance of the determination may not be admitted into evidence at any later stage of the case." RCW 4.24.525(4)(d)(i). Under defendants' theory—wherein all the responding party must do to defeat a special motion to strike is show a disputed material fact—subsection (4)(d)(i) would mean the mere fact that there *is* a triable issue of fact cannot be admitted into evidence. That makes little sense. By contrast, under plaintiffs' reading, subsection (4)(d)(i) has meaning. The legislature's apparent concern expressed in subsection (4)(d)(i) is that a jury at trial might give undue weight to a trial judge's factual finding that the plaintiff's claim establishes by clear and convincing evidence a probability of prevailing on the merits. Given that we harmonize related provisions in a statute whenever possible, *State v.*

-12-

*Hirschfelder*, 170 Wn.2d 536, 543, 242 P.3d 876 (2010), subsection (4)(d)(i) confirms our reading that RCW 4.24.525(4)(b) requires the trial judge to make a factual determination on the probability of plaintiffs prevailing on their claims. It is not a mere summary judgment proceeding.

Tellingly, defendants offer no textual analysis of RCW 4.24.525(4)(b)'s burden of proof or any related provisions. Instead, they point to nonbinding authorities supporting their view that the anti-SLAPP statute imposes a summary judgment analysis. In turn, plaintiffs counter with other nonbinding authorities to the contrary. We are cautious in looking beyond our state's statute, however, because among the slight majority of states that have adopted an anti-SLAPP statute, the details of these statutes vary significantly. *See* THOMAS R. BURKE, ANTI-SLAPP LITIGATION ch. 8 (2014) (collecting statutes).

Defendants primarily rely on California authority. They argue the Washington anti-SLAPP statute "mirrors the California anti-SLAPP act, which was enacted in 1992, was the model for Washington's law, and has consistently been construed to create a summary judgment standard." Resp'ts' Suppl. Br. at 10-11. It is true that some provisions of the Washington anti-SLAPP statute and the California statute resemble or are identical to each other. *Compare* RCW 4.24.525, *with* CAL. CIV. PROC. CODE § 425.16. But it is also true that they deviate. Wyrwich, *supra*, at 671-92 (discussing some of the similarities and differences between the two statutes and concluding that because Washington modeled its statute on California's, Washington courts must give effect to the differences in our anti-SLAPP statute); *see also* CAL.

-13-

CIV. PROC. CODE § 425.17(a) (amending the California anti-SLAPP statute, CAL. CIV. PROC. CODE § 425.16, to limit its application based on findings by the California legislature that *defendants* have engaged in a "disturbing abuse" of the anti-SLAPP statute contrary to *plaintiffs'* "rights of freedom of speech and petition for the redress of grievances"). And the relevant provisions of the two statutes at issue—their burden of proof standards—are notably different. California's statute provides that a plaintiff defeats a defendant's motion by establishing "*a probability* that the plaintiff will prevail on the claim." CAL. CIV. PROC. CODE § 425.16(b)(1) (emphasis added). By contrast, our statute expressly ratchets up the plaintiff's evidentiary burden, requiring the plaintiff to establish "by *clear and convincing evidence a probability* of prevailing on the claim." RCW 4.24.525(4)(b) (emphasis added). Where our legislature borrows a statute from another source but makes certain deviations from that source, "we are bound to conclude" the legislature's deviation "was purposeful and evidenced its intent" to differ from the original source on the particular issue. *State v. Jackson*, 137 Wn.2d 712, 723, 976 P.2d 1229 (1999). Therefore, case law interpreting the California statute's burden of proof does not inform the proper interpretation of our statute's burden of proof.[3]

---

[3] Given the difference between our statute and California's, we express no opinion on whether California's case law is a persuasive interpretation of the California statute or whether such a standard would be consistent with our constitution. *But see Opinion of the Justices*, 138 N.H. 445, 641 A.2d 1012, 1013-15 (1994) (holding a proposed anti-SLAPP bill using an "a probability" evidentiary standard "modeled after the California statute" violated the constitutional right of trial by jury). We note only that if our legislature desires to create a summary judgment standard for an anti-SLAPP motion, the relevant language in CR 56(c) describes that standard.

Defendants also cite two federal opinions that applied RCW 4.24.525(b)(4) to require a summary judgment analysis. *Phoenix Trading, Inc. v. Loops LLC*, 732 F.3d 936, 941-42 (9th Cir. 2013); *AR Pillow, Inc. v. Maxwell Payton, LLC*, No. C11-1962RAJ, 2012 WL 6024765, *2 (W.D. Wash. Dec. 4, 2012). But these opinions simply adopted California law without giving effect to our statute's different burden of proof, as we must do. *Jackson*, 137 Wn.2d at 723. By contrast, a federal court that grappled with RCW 4.24.525(b)(4)'s text and its unique burden of proof concluded that it requires a trial court to "dismiss a case without a trial based upon its view of the merits of the case" and that it "runs in direct conflict" with the traditional means of disposing of a claim without a trial under Federal Rules of Civil Procedure 12 and 56. *Intercon Solutions, Inc. v. Basel Action Network*, 969 F. Supp. 2d 1026, 1041-55 (N.D. Ill. 2013). Another federal court that grappled with RCW 4.24.525(4)(b)'s text reasoned that a "crucial distinction[]" between Washington's and California's statutes that "cannot be overstated" is that the Washington statute "radically alters a plaintiff's burden of proof." *Jones v. City of Yakima Police Dep't*, No. 12-CV-3005-TOR, 2012 WL 1899228, *3 (E.D. Wash. May 24, 2012). Because we must give effect to the textual differences between Washington's and California's anti-SLAPP statutes, the persuasive federal authority applying RCW 4.24.525(4)(b) confirms our plain language reading of RCW 4.24.525(4)(b)'s text.

Next, defendants cite case law applying three other jurisdictions' anti-SLAPP statutes. *Lamz v. Wells*, 938 So. 2d 792, 796 (La. Ct. App. 2006); *Abbas v. Foreign Policy Grp., LLC*, 975 F. Supp. 2d 1, 13 (D.D.C. 2013) (applying Washington, DC,

-15-

law); *Or. Educ. Ass'n v. Parks*, 253 Or. App. 558, 291 P.3d 789, 794 (2012). These authorities are unhelpful for the same reason California's case law is unhelpful: they do not interpret a clear and convincing evidentiary standard. Moreover, these opinions provide no new reasoning. The Louisiana opinion and the authority it cites do not explain why a summary judgment standard is correct even under its own statutes' burdens of proof. *Lamz*, 938 So. 2d at 796. The United States District Court opinion applying Washington, DC law forsakes textual analysis in favor of simply relying on California law to adopt a summary judgment analysis, *Abbas*, 975 F. Supp. 2d at 13, but the United States Court of Appeals for the District of Columbia has now abrogated this holding, noting that "it requires the Court to re-write the special motion to dismiss provision," *Abbas v. Foreign Policy Grp. LLC*, ___F.3d___, 2015 WL 1873140, *4 (D.C. Cir. 2015); *see also id.* ("Put simply, the D.C. Anti-SLAPP Act's likelihood of success standard is different from and more difficult for plaintiffs to meet than the standards imposed by Federal Rules 12 and 56."). Last, the Oregon opinion does not appear to hold that Oregon courts use a summary judgment standard in applying that state's anti-SLAPP statute.[4] These authorities thus provide no persuasive support for defendants' position.

---

[4] The Oregon Court of Appeals explained that the Oregon antiSLAPP statute requires a court to evaluate the evidence and draw a conclusion as to whether there is a probability that the plaintiff will prevail. *By contrast*, on summary judgment, the court must view the evidence and all reasonable inference that may be drawn from the evidence in the light most favorable to the nonmoving party, and draw a conclusion as to whether there is a triable disputed issue or fact.

*Or. Educ. Ass'n*, 291 P.3d at 794 (emphasis added).

-16-

Defendants next highlight that lower Washington courts have held RCW 4.24.525(4)(b) creates a summary judgment analysis. *See Johnson v. Ryan*, ___Wn. App.___, 346 P.3d 789, 793 (2015); *Spratt v. Toft*, 180 Wn. App. 620, 636-37, 324 P.3d 707 (2014); *Davis*, 180 Wn. App. at 528, 546-47; *Dillon*, 179 Wn. App. at 86-90. These opinions all followed this position based on the Court of Appeals opinion in *Dillon*. There, the Court of Appeals, in self-identified dicta, opined that RCW 4.24.525(4)(b) establishes a summary judgment standard. *See Dillon*, 179 Wn. App. at 86-90 (noting it was not "strictly necessary" to do so but stating it would "take this opportunity" to engage in a five-page discussion instructing Washington courts that they "should" use a summary judgment analysis). *But see, e.g., Davis*, 180 Wn. App. at 528, 546-47 (quoting *Dillon* as if it announced a holding on this issue).

In *Dillon*, the court recognized that California law is unpersuasive because the California statute lacks a clear and convincing evidence standard but it found Minnesota law to be persuasive because its anti-SLAPP statute uses such a standard. *Dillon*, 179 Wn. App. at 87-88. The court then adopted a Minnesota Court of Appeals decision that interpreted its statute to require clear and convincing evidence "'in light of the Rule 12 standard for granting judgment on the pleadings' or 'in light of the Rule 56 standard for granting summary judgment.'" *Id.* (emphasis omitted) (quoting *Nexus v. Swift*, 785 N.W.2d 771, 781-82 (Minn. Ct. App. 2010)).

As it turns out, the Minnesota Supreme Court subsequently abrogated Minnesota Court of Appeals opinion. *See Leiendecker v. Asian Women United of Minn.*, 848 N.W.2d 224, 231-33 (Minn. 2014). Similar to our statute's evidentiary

standard and unlike California's lower "a probability" standard, the Minnesota statute requires the trial court to determine whether "the responding party has produced clear and convincing evidence." *Compare* MINN. STAT. § 554.02, subd. 2(3), *and* RCW 4.24.525(4)(b), *with* CAL. CIV. PROC. CODE § 425.16(b)(1). The Minnesota Supreme Court noted that the "constitutional-avoidance canon provides a 'presumption . . . that a statute is constitutional, and we are required to place a construction on the statute that will find it so *if at all possible.*'" *Leiendecker*, 848 N.W.2d at 232 (alteration in original) (quoting *Kline v. Berg Drywall, Inc.*, 685 N.W.2d 12, 23 (Minn. 2004)). But it concluded that, under the statute's unambiguous terms, it was "neither reasonable nor 'possible'" to impose a summary judgment analysis onto the statute as a matter of construction because the summary judgment analysis and the anti-SLAPP standard "are incompatible with one another." *Id.* at 231-33.[5] Thus, the court held the statute requires the trial judge to find facts. *Id.*

We believe the reasoning of the Minnesota Supreme Court, interpreting a statute close to ours, is persuasive. It confirms our plain language analysis of RCW 4.24.525(4)(b)'s text, as described above. In sum, we hold RCW 4.24.525(4)(b) requires the trial judge to weigh the evidence and dismiss a claim unless it makes a factual finding that the plaintiff has established by clear and convincing evidence a probability of prevailing at trial.[6]

---

[5] The Minnesota Supreme Court expressly reserved the jury trial constitutional question in that case because no party argued that position. *Leiendecker*, 848 N.W.2d at 232.

[6] For the same reasons, we reject defendants' alternative argument that RCW 4.24.525(4)(b) creates a standard equivalent to that used when a trial judge evaluates whether to grant a motion for a directed verdict.

-18-

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

### B. *RCW 4.24.525(4)(b) Violates the Right of Trial By Jury under Article I, Section 21 of the Washington Constitution*

Under the Washington Constitution, "[t]he right of trial by jury shall remain inviolate." WASH. CONST. art. I, § 21.[7] "The term 'inviolate' connotes deserving of the highest protection" and "indicates that the right must remain the essential component of our legal system that it has always been." *Sofie v. Fibreboard Corp.*, 112 Wn.2d 636, 656, 771 P.2d 711, 780 P.2d 260 (1989). The right "must not diminish over time and must be protected from all assaults to its essential guaranties." *Id.* At its core, the right of trial by jury guarantees litigants the right to have a jury resolve questions of disputed material facts.

But the right of trial by jury is not limitless. For example, it is well established that "[w]hen there is no genuine issue of material fact, . . . summary judgment proceedings do not infringe upon a litigant's constitutional right to a jury trial." *LaMon v. Butler*, 112 Wn.2d 193, 200 n.5, 770 P.2d 1027 (1989) (citing *Nave v. City of Seattle*, 68 Wn.2d 721, 725, 415 P.2d 93 (1966); *Diamond Door Co. v. Lane-Stanton Lumber Co.*, 505 F.2d 1199, 1203 (9th Cir. 1974)). As discussed above, however, the trial judge must resolve disputed material facts under RCW

---

[7] The right of trial by jury protected by the Seventh Amendment to the United States Constitution does not apply to the states, *see Minn. & St. Louis R.R. v. Bombolis*, 241 U.S. 211, 217, 36 S. Ct. 595, 60 L. Ed. 961 (1916); *Walker v. Sauvinet*, 92 U.S. (2 Otto) 90, 92-93, 23 L. Ed. 678 (1875), so our opinion rests solely on article I, section 21 of the Washington Constitution, *see Sofie v. Fibreboard Corp.*, 112 Wn.2d 636, 644 & n.4, 771 P.2d 711, 780 P.2d 260 (1989).

4.24.525(4)(b)'s plain language, so the constitutionality of summary judgment procedures cannot save the anti-SLAPP statute.

Another relevant limit on the right of trial by jury is that it does not encompass *frivolous* claims that are brought for an improper purpose. The petition clause of the First Amendment to the United States Constitution informs this holding. The United States Supreme Court "recognize[s] that the right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances." *Bill Johnson's Rests., Inc. v. Nat'l Labor Relations Bd.,* 461 U.S. 731, 741, 103 S. Ct. 2161, 76 L. Ed. 2d 277 (1983); *see also Borough of Duryea, Pa. v. Guarnieri,* ___U.S.___, 131 S. Ct. 2488, 2494, 180 L. Ed. 2d 408 (2011) ("'[T]he right of access to courts for redress of wrongs is an aspect of the First Amendment right to petition the government.'" (quoting *Sure-Tan, Inc. v. Nat'l Labor Relations Bd.,* 467 U.S. 883, 896-97, 104 S. Ct. 2803, 81 L. Ed. 2d 732 (1984) and citing *BE&K Constr. Co. v. Nat'l Labor Relations Bd.,* 536 U.S. 516, 525, 122 S. Ct. 2390, 153 L. Ed. 2d 499 (2002); *Bill Johnson's Rests.,* 461 U.S. at 741; *Ca. Motor Transp. Co. v. Trucking Unlimited,* 404 U.S. 508, 513, 92 S. Ct. 609, 30 L. Ed. 2d 642 (1972)). For example, the question presented in *Bill Johnson's Restaurants* was whether the National Labor Relations Board (NLRB) could enjoin an employer's *non*frivolous pending lawsuit against an employee, when the employer was allegedly motivated to file the suit to retaliate against the employee's exercise of rights under the National Labor Relations Act, 29 U.S.C. §§ 151-169. *Bill Johnson's Rests.,* 461 U.S. at 733. Drawing the constitutional line, the court held that frivolous suits (i.e., those that lack a

"'reasonable basis,'" are "based on insubstantial claims," or are "baseless") are "not within the scope of the First Amendment protection" but that all other suits are constitutionally protected. *See id.* at 743-44. Thus, when a suit raises "a genuine issue of material fact that turns on the credibility of witnesses or on the proper inferences to be drawn from undisputed facts," the First Amendment requires that the suit cannot be enjoined because that would "usurp the traditional factfinding function of the . . . jury." *Id.* at 745.

The United States Supreme Court has elaborated on the contours of the First Amendment's right to petition in a doctrine that began in antitrust litigation. Under the *Noerr–Pennington* doctrine,[8] when individuals petition any branch of government, including the courts, such petitioning cannot be a basis for antitrust liability, unless the petition was a "'mere sham.'" *BE&K Constr. Co.*, 536 U.S. at 525 (quoting *E. R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 144, 81 S. Ct. 523, 5 L. Ed. 2d 464 (1961)). To constitute unprotected sham litigation, the litigation must meet two criteria. First, it "'must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits,'" and second, the litigant's "subjective motivation" must be to "'interfere *directly* with the business relationships of a competitor . . . through the use [of] the governmental *process*—as opposed to the *outcome* of that process—as an anticompetitive weapon.'" *Id.* at 526 (alterations in original) (quoting *Prof'l Real Estate Investors, Inc. v. Columbia*

---

[8] This doctrine arises from *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S. Ct. 523, 5 L. Ed. 2d 464 (1961), and *United Mine Workers of America v. Pennington*, 381 U.S. 657, 85 S. Ct. 1585, 14 L. Ed. 2d 626 (1965).

*Pictures Indus., Inc.*, 508 U.S. 49, 60-61, 113 S. Ct. 1920, 123 L. Ed. 2d 611 (1993)). In *BE&K Construction Co.*, for example, the court applied this doctrine to hold that the NLRB's imposition of liability on an employer for its filing of a retaliatory lawsuit against unions, after the lawsuit had lost on its merits, still violated the petition clause because the NLRB imposed the liability without proving the employer's suit was objectively baseless, as defined above. *Id.* at 523, 536.

In sum, the United States Supreme Court has interpreted the petition clause to expansively protect plaintiffs' constitutional right to file lawsuits seeking redress for grievances. The only instance in which this petitioning activity may be constitutionally punished is when a party pursues frivolous litigation, whether defined as lacking a "'reasonable basis,'" *Bill Johnson's Rests.*, 461 U.S. at 743, or as sham litigation, *BE&K Constr. Co.*, 536 U.S. at 524-26.[9] That the petition clause requires this limitation makes good sense, considering that "[t]he right to sue and defend in the courts is the alternative of force. In an organized society it is the right conservative of

---

[9] The United States Supreme Court's petition clause jurisprudence does not call into question long-standing fee-shifting provisions that do not turn on a finding of frivolousness. *BE&K Constr. Co.*, 536 U.S. at 537 ("[N]othing in our holding today should be read to question the validity . . . of statutory provisions that merely authorize the imposition of attorney's fees on a losing plaintiff."). Instead, the court has found unconstitutional only serious deprivations or punishments of petitioning activity, such as the enjoinment of the suit in *Bill Johnson's Restaurants* or imposition of substantive liability in the *Noerr–Pennington* cases. Whatever the precise contours of the line, RCW 4.24.525(6)(a) doubtlessly falls on the impermissible side that punishes the exercise of the right to petition. In addition to attorney fees and cost shifting, the statute assesses a statutory penalty of $10,000 (potentially to each movant, as in this case below, where $160,000 was awarded in total to the 16 movants) and "[s]uch additional relief . . . as the court determines to be necessary to deter repetition of the conduct and comparable conduct by others similarly situated." RCW 4.24.525(6)(a)(iii). This is harsh punishment for bringing what may be a nonfrivolous claim, albeit one that cannot show by clear and convincing evidence a probability of succeeding at trial.

all other rights, and lies at the foundation of orderly government. It is one of the highest and most essential privileges of citizenship." *Chambers v. Baltimore & Ohio R.R.*, 207 U.S. 142, 148, 28 S. Ct. 34, 52 L. Ed. 143 (1907).

Interpreting the right of trial by jury in light of the petition clause jurisprudence, we recognize that article I, section 21 of the Washington Constitution does not encompass the right of jury trial on frivolous or sham claims. Exclusion of such claims comports with the long-standing principle that litigants cannot be allowed to abuse the heavy machinery of the judicial process for improper purposes that cause serious harm to innocent victims, such as to harass, cause delay, or chill free expression. Such conduct has always been, and always will be, sanctionable. *See, e.g.*, RCW 4.84.185 (providing a court in any civil action may award reasonable expenses, including attorney fees, incurred in defending against a claim or defense that is "frivolous and advanced without reasonable cause"); CR 11(a) (providing a court in any civil action may award an appropriate sanction, including reasonable expenses incurred and attorney fees, to a party that defends against a claim or defense that a reasonable inquiry would have shown is not "well grounded in fact," not "warranted by existing law or a good faith argument" for change to the law, or is used "for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation"); RPC 3.1 (providing a lawyer commits professional misconduct by asserting a "frivolous" claim, defense, or issue); RPC 4.4(a) (providing a lawyer commits professional misconduct by using "means that have no substantial purpose other than to embarrasses, delay, or burden a third

person"); RESTATEMENT (SECOND) OF TORTS § 674 (1965) (providing a cause of action for wrongful use of civil proceedings when a claim is brought "without probable cause, and primarily for a purpose other than that of securing the proper adjudication of the claim in which the proceedings are based"); RESTATEMENT § 682 (providing a cause of action for abuse of process against "[o]ne who uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed"). All of these remedies are consistent with the right of trial by jury because they are limited to punishing or deterring frivolous or sham litigation.

But the same cannot be said of the anti-SLAPP statute. It is not so limited. RCW 4.24.525(4)(b) requires the trial judge to make a factual determination of whether the plaintiff has established by clear and convincing evidence a probability of prevailing on the claim. This is no frivolousness standard. *See, e.g., Goldmark v. McKenna*, 172 Wn.2d 568, 582, 259 P.3d 1095 (2011) ("A frivolous action is one that cannot be supported by any rational argument on the law or facts."); *Millers Cas. Ins. Co. of Tex. v. Briggs*, 100 Wn.2d 9, 15, 665 P.2d 887 (1983) ("'[A]n appeal is frivolous if there are no debatable issues upon which reasonable minds might differ, and it is so totally devoid of merit that there was no reasonable possibility of reversal.'" (quoting *Streater v. White*, 26 Wn. App. 430, 435, 613 P.2d 187 (1980))). Rather, the statute mandates dismissal of a claim and imposition of sanctions merely because the claim cannot establish by clear and convincing evidence a probability of prevailing at trial. *Cf. BE&K Constr. Co.*,

536 U.S. at 532 ("[T]he genuineness of a [claim] does not turn on whether it succeeds."); *Bryant v. Joseph Tree, Inc.*, 119 Wn.2d 210, 220, 829 P.2d 1099 (1992) ("The fact that a [claim] does not prevail on its merits is by no means dispositive of the question of CR 11 sanctions."); *Holland v. City of Tacoma*, 90 Wn. App. 533, 546, 954 P.2d 290 (1998) (properly holding judgment may be entered against a plaintiff's claim on summary judgment without the claim being frivolous). Significantly, a separate subsection of the anti-SLAPP statute uses a frivolousness standard, in contrast to the burden of proof under RCW 4.24.525(4)(b). The statute provides that if an *anti-SLAPP motion* is "frivolous or is solely intended to cause unnecessary delay," the responding party is entitled to statutory remedies. RCW 4.24.525(6)(b). This provision's standard, intended to deter improper anti-SLAPP motions, makes clear that RCW 4.24.525(4)(b)'s standard is a higher threshold than a frivolousness inquiry.

Thus, RCW 4.24.525(4)(b) creates a truncated adjudication of the merits of a plaintiff's claim, including nonfrivolous factual issues, without a trial. Such a procedure invades the jury's essential role of deciding debatable questions of fact. In this way, RCW 4.24.525(4)(b) violates the right of trial by jury under article I, section 21 of the Washington Constitution.[10]

---

[10] Defendants recognize that plaintiffs' jury trial argument presents a facial challenge based on article I, section 21 of the Washington Constitution. They point out the claims in this lawsuit include a request for equitable relief that would not be presented to a jury, noting a facial challenge "'must establish that no set of circumstances exists under which the Act would be valid.'" Resp'ts' Suppl. Br. at 10 (quoting *United States v. Salerno*, 481 U.S. 739, 745, 107 S. Ct. 2095, 95 L. Ed. 2d 697 (1987)). *But see United States v. Stevens*, 559 U.S. 460, 472-73, 130 S. Ct. 1577, 176 L. Ed. 2d 435 (2010) (recognizing that whether subsequent United States Supreme Court case law has

C. *The Constitutionally Invalid Aspects of RCW 4.24.525 Cannot Be Severed from Its Remaining Provisions*

Because we hold RCW 4.24.525(4)(b) is unconstitutional, we must determine whether the provision is severable from the rest of RCW 4.24.525. We conclude it is not.

To determine severability, we first ask whether "'the constitutional and unconstitutional provisions are so connected . . . that it could not be believed that the legislature would have passed one without the other.'" *Abrams*, 163 Wn.2d at 285 (alterations in original) (internal quotation marks omitted) (quoting *Gerberding v. Munro*, 134 Wn.2d 188, 197, 949 P.2d 1366 (1998)). We then consider whether "'the part eliminated is so intimately connected with the balance of the act as to make it useless to accomplish the purposes of the legislature.'" *Id.* at 285-86 (internal quotation marks omitted) (quoting *Gerberding*, 134 Wn.2d at 197). As to the first inquiry, we may look to the presence of a severability clause in the statute for "'the necessary assurance that the remaining provisions would have been enacted without the portions which are contrary to the constitution.'" *Id.* at 286 (quoting *State v. Anderson*, 81 Wn.2d 234, 236, 501 P.2d 184 (1972)). Here, the anti-SLAPP statute contains a provision stating, "If any provision of this act or its application to any person or circumstance is held invalid, the remainder of

---

repudiated *Salerno* on this point is unresolved). Our decision does not turn on the character of the particular claims here, as there is no question the statute broadly applies to all claims, with the only limitation being that they concern an action involving public participation and petition. RCW 4.24.525(2), (4)(b). By its plain terms, the special motion to strike procedure is incompatible with article I, section 21 of the Washington Constitution.

-26-

the act or the application of the provision to other persons or circumstances is not affected." LAWS OF 2010, ch. 118, § 5.

Nonetheless, under the second test of severability, subsection (4)(b) is not severable. This subsection is the law's mainspring because every provision in RCW 4.24.525 has meaning and effect only in connection with the filing of the special motion to strike under subsection (4)(b). *See Leonard v. City of Spokane*, 127 Wn.2d 194, 202, 897 P.2d 358 (1995) (holding a provision that was "the heart and soul of the Act" is nonseverable). Therefore, this case presents a paradigmatic example of a nonseverable provision. Without subsection (4)(b), the rest of RCW 4.24.525 is "'useless to accomplish the purposes of the legislature.'" *Abrams*, 163 Wn.2d at 286 (internal quotation marks omitted) (quoting *Gerberding*, 134 Wn.2d at 197). We therefore invalidate RCW 4.24.525 as a whole.

## III. CONCLUSION

The legislature may enact anti-SLAPP laws to prevent vexatious litigants from abusing the judicial process by filing frivolous lawsuits for improper purposes. But the constitutional conundrum that RCW 4.24.525 creates is that it seeks to protect one group of citizen's constitutional rights of expression and petition—by cutting off another group's constitutional rights of petition and jury trial. This the legislature cannot do. *See Opinion of the Justices*, 134 N.H. 445, 641 A.2d 1012, 1015 (invalidating an anti-SLAPP bill because the law "cannot strengthen the constitutional rights of one group of citizens by infringing upon the rights of another group"). We hold RCW 4.24.525(4)(b) violates the right of trial by jury under article I, section 21

of the Washington Constitution because it requires a trial judge to invade the jury's province of resolving disputed facts and dismiss—and punish—nonfrivolous claims without a trial. We reverse the Court of Appeals and remand the case to the superior court for further proceedings.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Stephens, J

WE CONCUR:

Madsen, C.J.

Wiggins, J.

González, J.

Fairhurst, J.