IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Visits with: | ) | |
| | ) | No. 38384-9-III |
| K.B., | ) | |
| | ) | |
| LEIGH BILTOFT, DANEA BILTOFT, | ) | |
| | ) | |
| Appellants. | ) | |
| | ) | UNPUBLISHED OPINION |
| v. | ) | |
| | ) | |
| JORDAN BILTOFT, STACEY BILTE, | ) | |
| | ) | |
| Respondents. | ) | |

FEARING, J. — Leigh and Danea Biltoft appeal from the superior court's summary dismissal of their petition for court-mandated visitation with their grandson. The Biltofts argue that the trial court erred in dismissing the petition without holding an evidentiary hearing. Because the Biltofts' petition failed to allege that the child would likely suffer harm or risk substantial harm due to a lack of grandparent visitation, we affirm the dismissal.

FACTS

The facts reach us by way of conflicting affidavit testimony. We narrate some of the facts presented by both parties.

Jordan Biltoft (Jordan) and Stacey Bilte (Bilte) begot "Eric," a pseudonym. The two parents entered a parenting plan, which granted Jordan residential time with Eric during every other weekend and every Wednesday overnight.

During an unidentified period of time, Jordan Biltoft lived with his parents, Leigh and Danea Biltoft. Therefore, when Jordan exercised residential time with Eric, Eric lived with his grandparents.

Jordan Biltoft struggled with drug use and a mental health illness. In late September 2020, Jordan encountered Stacey Bilte, Eric, and Bilte's brother in a parking lot. Jordan drove his car aggressively toward the trio, screamed, and threatened Stacey's brother. Law enforcement arrested Jordan following the confrontation.

No one currently knows Jordan Biltoft's location. In December 2020, Leigh and Danea Biltoft spotted Jordan living homeless in downtown Spokane, but he fled before they could approach him.

After Jordan Biltoft scarpered, Stacey Bilte continued to permit Eric limited visitation with Leigh and Danea Biltoft. Bilte remained present during the visits and sometimes brought a relative with her. The parties diverge in their retellings of these visits. The Biltofts characterize the visits as affable and claim they are supportive of Bilte as a parent. Bilte and her relatives characterize the grandparents as rude, aggressive, and controlling. Neither party divulges what, if any, visitation the Biltofts now enjoy.

No. 38384-9-III,
*In re Visits with K.B.*


PROCEDURE

Leigh and Danea Biltoft filed a petition for visitation with Eric. In addressing how Eric would likely suffer harm or a substantial risk of harm without visitation, the Biltofts wrote:

> There is no question that [Eric] loves his father and has suffered a substantial loss with his absence, through no fault of his own. The loss was abrupt and confusing for him. There is no question [Eric] is grieving that loss. It would be tragic for [Eric] to also lose half of his family, his grandparents, uncle, aunt, and cousins. [Eric] spent every other weekend with this family for many years. It is difficult to quantify the loss that he will suffer if those relationships are not allowed to continue. [Eric] deserves to have love of his whole family. . . . [Eric] would suffer a loss of half of his family if we are not granted some visitation with him to ensure that he continues to have a relationship with us and can assure him that he is loved by everyone, and his father's illness is not his fault and does not mean that he does not love [Eric]. . . .
>
> We only want what is best for [Eric], to help him, by supporting his mother. Children that feel rejected or who feel that they have been abandoned by family have higher incidents of substance use/abuse as they grow and mature. They are involved in risky behaviors and have more mental health issues such as depression and anxiety. Now more than ever, it is important for [Eric] to experience the love and affection of his family. As his grandparents, we can provide him some important advantages to his life.

Clerk's Papers (CP) at 8.

After reviewing affidavits from the parties and their witnesses, the superior court denied the petition for visitation. The court concluded that Leigh and Danea Biltoft had "not rebutted [supported] with clear and convincing evidence that the child will likely suffer harm or substantial risk of harm if visitation is denied." CP at 174. According to

3

the superior court, a "history of distrust" between Stacey Bilte and the Biltofts legitimized Bilte's concerns about additional visitation. CP at 173. The court predicted that Bilte will continue to afford some visitation.

## LAW AND ANALYSIS

On appeal, Leigh and Danea Biltoft argue that the superior court committed both procedural error and substantive error. According to the Biltofts, the court employed a mistaken burden of proof at the threshold hearing, failed to consider possible future testimony, ignored their evidence, and reached the wrong decision as to whether Eric will suffer harm without visitation with his grandparents. We reject all arguments.

Chapter 26.11 RCW, adopted in 2018, controls visitation between a relative and a child against a parent's wishes. The substantive statute, RCW 26.11.020, declares:

> (1) A person who is not the parent of the child may petition for visitation with the child if:
> (a) The petitioner has an ongoing and substantial relationship with the child;
> (b) The petitioner is a relative of the child or a parent of the child; and
> *(c) The child is likely to suffer harm or a substantial risk of harm if visitation is denied.*
> (2) A person has established an ongoing and substantial relationship with a child if the person and the child have had a relationship formed and sustained through interaction, companionship, and mutuality of interest and affection, without expectation of financial compensation, with substantial continuity for at least two years unless the child is under the age of two years, in which case there must be substantial continuity for at least half of the child's life, and with a shared expectation of and desire for an ongoing relationship.

4

(Emphasis added.)  This appeal focuses on whether Leigh and Danea Biltoft presented sufficient facts to satisfy the element of harm or substantial risk of harm under subsection (1)(c).

A rare procedure that includes a sufficient evidence determination by the superior court applies to a petition for nonparental visitation.  We label this hearing a threshold hearing.  RCW 26.11.030 reads, in pertinent part:

> (5) The petitioner must file with the petition an affidavit alleging that:
> (a) A relationship with the child that satisfies the requirements of RCW 26.11.020 exists or existed before action by the respondent; and
> (b) The child would likely suffer harm or the substantial risk of harm if visitation between the petitioner and child was not granted.
> (6) The petitioner shall set forth facts in the affidavit supporting the petitioner's requested order for visitation.
> (7) The petitioner shall serve notice of the filing to each person having legal custody of, or court-ordered residential time with, the child.  A person having legal custody or residential time with the child may file an opposing affidavit.
> *(8) If, based on the petition and affidavits, the court finds that it is more likely than not that visitation will be granted, the court shall hold a hearing.*

(Emphasis added.)

RCW 26.11.030(8) implies that, if the superior court finds, during the threshold hearing, the petitioner will not likely succeed at an evidentiary hearing, the court must dismiss the petition.  In *Davis v. Cox*, 183 Wn.2d 269, 351 P.3d 862 (2015), *abrogated on other grounds by Maytown Sand & Gravel, LLC v. Thurston County*, 191 Wn.2d 392, 423 P.3d 223 (2018), the Washington Supreme Court declared unconstitutional, based on

the right to a jury trial, a similar threshold summary procedure adopted by one of the state's Strategic Lawsuit Against Public Participation statutes. Nevertheless, a party lacks any right to a jury trial on a nonparental visitation petition. Leigh and Danea Biltoft do not seek to invalidate chapter 26.11 RCW.

A third statute, within chapter 26.11 RCW, RCW 26.11.040 presents rules for the a later evidentiary hearing, assuming the court grants the hearing:

> (1)(a) At a hearing pursuant to RCW 26.11.030(8), the court shall enter an order granting visitation if it finds that the child would likely suffer harm or the substantial risk of harm if visitation between the petitioner and the child is not granted and that granting visitation between the child and the petitioner is in the best interest of the child.
> (b) An order granting visitation does not confer upon the petitioner the rights and duties of a parent.
> (2) In making its determination, the court shall consider the respondent's reasons for denying visitation. *It is presumed that a fit parent's decision to deny visitation is in the best interest of the child and does not create a likelihood of harm or a substantial risk of harm to the child.*
> *(3) To rebut the presumption in subsection (2) of this section, the petitioner must prove by clear and convincing evidence that the child would likely suffer harm or the substantial risk of harm if visitation between the petitioner and the child were not granted.*
> (4) If the court finds that the petitioner has met the standard for rebutting the presumption in subsection (2) of this section, or if there is no presumption because no parent has custody of the child, the court shall consider whether it is in the best interest of the child to enter an order granting visitation. The petitioner must prove by clear and convincing evidence that visitation is in the child's best interest. In determining whether it is in the best interest of the child, the court shall consider the following, nonexclusive factors:
> (a) The love, affection, and strength of the current relationship between the child and the petitioner and how the relationship is beneficial to the child;

(b) The length and quality of the prior relationship between the child and the petitioner before the respondent denied visitation, including the role performed by the petitioner and the emotional ties that existed between the child and the petitioner;

(c) The relationship between the petitioner and the respondent;

(d) The love, affection, and strength of the current relationship between the child and the respondent;

(e) The nature and reason for the respondent's objection to granting the petitioner visitation;

(f) The effect that granting visitation will have on the relationship between the child and the respondent;

(g) The residential time-sharing arrangements between the parties having residential time with the child;

(h) The good faith of the petitioner and respondent;

(i) Any history of physical, emotional, or sexual abuse or neglect by the petitioner, or any history of physical, emotional, or sexual abuse or neglect by a person residing with the petitioner if visitation would involve contact between the child and the person with such history;

(j) The child's reasonable preference, if the court considers the child to be of sufficient age to express a preference;

(k) Any other factor relevant to the child's best interest; and

(l) The fact that the respondent has not lost his or her parental rights by being adjudicated as an unfit parent.

(Emphasis added.)

RCW 26.11.040 imposes on the petitioner a clear, cogent, and convincing burden of proof for the evidentiary hearing. RCW 26.11.030(8) imposes no intermediate evidentiary burden for the threshold hearing. For this reason, Leigh and Danea Biltoft challenge the superior court's decision as misapplying their burden of proof when writing that they did not rebut Stacey Bilte's evidence with clear, cogent, and convincing proof. We disagree. We conclude that the superior court, when conducting the threshold hearing, must reflect on this higher burden of proof in order to discern whether the court

7

would later more likely than not grant visitation. Such a threshold determination demands that the superior court assess whether the petitioners, through their affidavits, rebutted opposing affidavits with regard to potential harm to the child.

The requirement of a threshold hearing and a clear, cogent, and convincing evidence burden of proof fulfill the principle that parents have a fundamental liberty right to autonomy in child rearing decisions. *In re Custody of Smith*, 137 Wn.2d 1, 13, 969 P.2d 21 (1998), *aff'd sub nom. Troxel v. Granville*, 530 U.S. 57, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000) (plurality opinion). Also, a full hearing on a deficient petition needlessly subjects all parties to increased litigation costs. Our ruling with regard to the burden of proof at the threshold stage comports with our decision in *In re Visits with R.V.*, 14 Wn. App. 2d 211, 470 P.3d 531 (2020).

Leigh and Danea Biltoft also contend that the trial court should have considered that they would have introduced additional evidence at a later evidentiary hearing. We again disagree. We do not expect the court at the threshold hearing to consider the various hypothetical developments that may unfold at a hearing. The visitation statute provides a procedure, during which the court makes an initial determination at a threshold hearing based solely on the parties' pleadings. The parties bear responsibility at the threshold stage to advance all relevant supporting evidence.

Leigh and Danea Biltoft next argue that the trial court did not weigh the evidence presented by both parties. We differ. The superior court's order disclosed that the court

reviewed the Biltofts' petition and all declarations, documents, and affidavits submitted by the parties. In any event, the court's ultimate conclusion rested on the Biltofts' failure to allege harm. This finding did not require the court to undertake an extensive analysis of the parties' conflicting testimony because it followed from the inadequacy of the Biltofts' petition. We proceed to analyze this failure and the Biltofts' contention that they presented sufficient facts of harm.

Demonstrating harm from the denial of visitation should focus on the relationship between the petitioner and the child and the harm that will come to the child if they are denied contact with the petitioner. *In re Visits with A.S.A.*, 21 Wn. App. 2d 474, 482, 507 P.3d 28 (2022). In other words, the petitioner must bring something unique to the child without which the child would suffer harm. *In re Visits with A.S.A.*, 21 Wn. App. 2d 474, 482 (2022). Continued contact with the nonparent must be necessary to prevent the harm alleged. *In re Visits with A.S.A.*, 21 Wn. App. 2d at 482. This test differs from whether the custodial parent causes harm. *In re Visits with A.S.A.*, 21 Wn. App. 2d at 482.

Belief that visitation might better a child's quality of life is insufficient to justify state intervention. *In re Custody of Smith*, 137 Wn.2d 1, 20 (1998). The petitioner must show more than a child being severed from half of his or her familial heritage. *In re Visits with R.V.*, 14 Wn. App. 2d 211, 225 (2020). While a child may benefit from a continuing relationship with his or her extended family members, a petitioner does not demonstrate harm merely by claiming that the child will lose such benefit. *In re Visits*

*with A.S.A.*, 21 Wn. App. 2d 474, 485 (2022) (Pennell, J., concurring). Nevertheless, the Supreme Court has recognized that, when a child has enjoyed a substantial relationship with a third person, arbitrarily depriving the child of the relationship could cause severe psychological harm to the child. *In re Custody of Smith*, 137 Wn.2d 1, 20 (1998).

The statutory requirement that a visitation petitioner show harm or likelihood of harm to a child, in addition to the intermediate burden of proof, has its roots in constitutional principles. In order to overcome the presumption that a parent acts in his or her child's best interests, a nonparental relative is constitutionally required to show that a lack of visitation will harm the child. *In re Parentage of C.A.M.A.*, 154 Wn.2d 52, 64, 109 P.3d 405 (2005).

In *In re Custody of Smith*, 137 Wn.2d 1 (1998), the Washington Supreme Court held that a nonparental visitation statute may override a decision of a parent when the decision would harm the child. The Supreme Court invalidated the nonparental visitation statute in force at the time because it required only a showing that visitation would be in the best interest of the child. The petitioner did not have to prove harm as a result of the discontinuation of visitation. Our high court reaffirmed the requirement that a petitioner prove harm in *Parentage of C.A.M.A.*, 154 Wn.2d 52, 64 (2005). The Washington Supreme Court struck down a revived nonparental visitation statute, in part, because the statute again failed to require any showing of harm to the child. When, thirteen years after *Parentage of C.A.M.A.*'s publication, the legislature reinstituted a procedure by

which a nonparent may petition for visitation with a child, the new law included a requirement that petitioners demonstrate harm or likelihood of harm to a child should visitation be denied. RCW 26.11.040(3).

Leigh and Danea Biltoft's petition highlighted potential harms Eric faces from an absent father. The Biltofts claimed a missing father places Eric at greater risk of substance abuse, mental illness, and risky behavior. Leigh and Danea Biltoft further posit that Eric's losing half of his family will wreak unquantifiable loss. Nevertheless, a loss does not necessarily equate to harm. More importantly, the law cannot remedy harm to Eric following his father's abandonment. Such harm would not result from Eric's inability to visit his grandparents. Eric losing contact from his father's extended family does not suffice for a finding of harm.

Leigh and Danea Biltoft also contend their presence would add to the love and affection afforded Eric and thereby advantage him. Nevertheless, advantages do not equate to the presence of harm without those advantages.

Leigh and Danea Biltoft challenge the superior court's finding that Stacey Bilte will allow some visitation for the grandparents with Eric. We need not resolve this contention since the superior court possessed sufficient cause to dismiss the petition when concluding that the Biltofts had failed to allege harm.

This court reviews a trial court's determination at the threshold stage for abuse of discretion. The superior court abuses discretion if a decision is manifestly unreasonable

11

No. 38384-9-III,
*In re Visits with K.B.*

or based on untenable grounds or untenable reasons. *In re Visits with R.V.*, 14 Wn. App. 2d 211, 219-21 (2020). We find no abuse of discretion.

Stacey Bilte requests attorney fees on appeal. RAP 18.1(a) grants a party the right to recover reasonable attorney fees if provided by applicable law. Bilte fails to cite any applicable law in her briefing. Therefore, we deny the request.

CONCLUSION

We affirm the dismissal of Leigh and Danea Biltoft's petition for visitation with their grandson. We deny Stacey Bilte's requests for attorney fees.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Fearing, J.

WE CONCUR:

Pennell, J.

Staab, J.

12